# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VOICE DOMAIN TECHNOLOGIES, LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **CIVIL ACTION** |
| APPLE, INC., | ) ) | **NO. 13-40138-TSH** |
| Defendant. | ) ) ) | |

## ORDER

### October 8, 2014

Hennessy, M.J.

By Order of Reference dated July 29, 2014, pursuant to 28 U.S.C. § 636(b)(1)(A) (Docket #47), this matter was referred to me for a ruling on the competing Motions for Protective Orders of Plaintiff Voice Domain Technologies, LLC ("Voice Domain") (Docket #44) and Defendant Apple, Inc. ("Apple") (Docket #45). These matters are now ripe for adjudication. For the reasons that follow, the competing Motions are both DENIED. The Parties are hereby ORDERED to submit a Proposed Protective Order consistent with the reasoning and dictates of this Order.

I. BACKGROUND

Voice Domain is a Connecticut limited liability company founded by Bruce Barker in 1999 with a principal place of business in Westborough, Massachusetts. (Docket #1 at ¶ 1). Barker is the inventor of several patents and Voice Domain is the assignee of his inventions. (Id.). Voice Domain is the owner of United States patent number 6,281,883 (the "'883 Patent"), which was issued by the United States Patent and Trademark Office ("PTO") on August 28,

2001 to Barker and assigned to Voice Domain. (Id. at ¶ 2). Voice Domain has licensed the '883 Patent to corporations whose products incorporate Barker's inventions. (Id. at ¶ 3).

In January 2013, Barker contacted Apple about the need to license the '883 Patent. (Docket #44 at 4). On November 25, 2013, Voice Domain filed suit against Apple alleging that Apple has infringed at least claim 1 of the '883 Patent through the inclusion of Siri voice command functionality in their devices. (Docket #1 at ¶ 10). Apple filed its answer and a counterclaim for a declaration of non-infringement, invalidity, and unenforceability on March 7, 2014. (Docket #22).

On May 13, 2014, Judge Hillman adopted the parties' joint statement as the scheduling order. (Docket #36). Pursuant to that schedule, Voice Domain was required to serve and file preliminary disclosure of the claims infringed and produce all documents supporting its contentions by June 3, 2014. (Docket #31 at 2). Apple was required to serve and file its Preliminary Invalidity and Non-Infringement Contentions and produce documents relevant to its invalidity defenses by August 11, 2014. (Id. at 2-3). Pursuant to the scheduling order, Apple was also required to produce documents sufficient to show operation of the accused products or methods identified by Voice Domain in its preliminary infringement disclosures by August 11, 2014, if a protective order had been entered. (Id. at 3). On August 11, 2014, Apple filed its preliminary invalidity and non-infringement contentions. (Docket #55). As no protective order had been entered, Apple did not produce documents sufficient to show operation of the accused products or methods identified by Voice Domain in its preliminary infringement disclosures on August 11, 2014.

Voice Domain filed its Motion for a Protective Order on July 3, 2014. (Docket #44). On July 17, 2014, Apple filed its opposition and a Motion for Protective Order. (Docket #45). After

extensive briefing, a hearing on the matter was held on September 5, 2014. (Docket #57). Following the hearing, Apple and Voice Domain each filed a supplemental memorandum addressing issues raised at the hearing. (Dockets #61 and 65, respectively).

II.     STANDARD

The scope of discovery generally extends to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). If a party or any person from whom discovery is sought shows good cause, the Court may issue an order to protect that party or person "from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "Rule 26(c) is highly flexible, having been designed to accommodate all relevant interests as they arise. The 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." Gill v. Gulfstream Park Racing Ass'n, 339 F.3d 391, 402 (1st Cir. 2005) (quoting United States v. Microsoft Corp, 165 F.3d 952, 959-60 (D.C. Cir. 1999)) (alterations omitted). The burden is on the party seeking the more restrictive protective order to show good cause under Rule 26(c). Pharmachemie, B.V. v. Pharmacia, Inc., No. 95-40085-NMG, 1998 U.S. Dist. LEXIS 2192, at *4 (D. Mass. Jan. 30, 1998) (Swartwood, M.J.). To show good cause, the party seeking the protective order must demonstrate a particular need for protection; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986), quoted in Parmachemie, 1998 U.S. Dist. LEXIS 2192, at *4.

III.   ANALYSIS

The parties are in agreement as to the majority of the provisions of the proposed protective orders; however, there are three proposed provision as to which the parties disagree.[1] Voice Domain argues that these disputed provisions are unnecessary as the agreed-to provisions of the protective order and other facts already sufficiently protect Apple and any additional restrictions would allow Apple to use the protective order as a tactic to game the outcome of the case.

A.   Confidentiality Provisions

Apple's proposed protective order has three tiers of confidentiality designations: CONFIDENTIAL, CONFIDENTIAL – ATTORNEYS' EYES ONLY ("AEO"), and CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE ("SOURCE CODE"). (Docket #45-2). Material designated as CONFIDENTIAL can be seen by a party's outside counsel and a limited number of a party's employees. (Id. at ¶ 8). Material designated as AEO and SOURCE CODE may be seen by a party's outside counsel who is not involved in "competitive decision making" for a party, but not in-house counsel. (Id. at ¶¶ 9-10). The parties agree that Barker is expressly prohibited from accessing material designated as SOURCE CODE. (Docket #44-9 at 3; Docket #45 at 4 n.3). However, the parties disagree over whether Barker should be allowed access to material designated AEO.

Apple's proposed AEO provision reads, in relevant part:

(a) A Producing Party may designate Discovery Material as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only if such material contains or reflects information that is extremely confidential and/or extremely sensitive in nature and the Producing Party reasonably believes in good faith that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive

---

[1] Apple's proposed protective order is available at Docket #45-2. A document comparison showing the differences between the Voice Domain and Apple proposed protective orders is available at Docket #45-7.

>disadvantage to the Producing Party, such as trade secrets, non-public technical information such as product development information, engineering documents and testing documents, non-public sensitive financial data such as pricing information, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, employee information, other non-public information of similar competitive and business sensitivity and information subject to an obligation of confidentiality to a third person or Court.
>
>(b)  Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL-ATTORNEYS' EYES ONLY" may be disclosed only to:
>
>(i)  The Receiving Party's Outside Counsel, provided that such Outside Counsel is not involved in competitive decision-making, as defined by case law, on behalf of a Party or a competitor of a Party, and such Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff.  For purposes of section 9, Bruce Barker shall not be given access to Discovery Material designated as "CONFIDENTIAL-ATTORNEYS' EYES ONLY"[.]

(Docket #45-2 at ¶ 9).

Voice Domain's proposed protective order eliminates the AEO designation.  (Docket #45-7).  Hence, Barker would have access to all materials produced other than SOURCE CODE. Under Voice Domain's proposal, Barker would be allowed to see Apple's trade secrets; non-public technical information such as product development information, engineering, and testing documents; non-public sensitive financial data such as pricing information, sales information, sales or marketing forecasts or plans, business plans, sales or marketing strategy, employee information, and other non-public information of similar competitive and business sensitivity.[2] Voice Domain argues that the AEO provision will preclude Barker, and therefore, Voice Domain itself, from evaluating any non-public technical or financial information and thereby impair its ability to make sound litigation decisions.  (Docket #44 at 17-18).

---

[2] In its supplemental submission following the hearing, Apple stated that it would be amenable to allowing Barker to review the following types of financial documents, which would likely be designated AEO, following the commencement of fact discovery:  Apple's summary financial reports for relevant time periods that show the price and number of units sold of the accused devices; licenses potentially relevant to the determination of a reasonable royalty in this case, if any; and agreements potentially relevant to valuation of the voice-recognition software at issue in this litigation.  (Docket #61 at 2).  The Court expects that the proposed protective order submitted pursuant to this Order shall include these terms.

Voice Domain's removal of the AEO provision also eliminates previously agreed-to protections. With the elimination of the AEO designation, the only available designations are either CONFIDENTIAL or SOURCE CODE. (Docket #45-7 at ¶¶ 8-10). Thus, all the information that would have been labeled AEO, i.e., highly confidential information that is not SOURCE CODE, can only be designated as CONFIDENTIAL. Apple and Voice Domain had previously agreed that material designated CONFIDENTIAL could be disclosed to mock jurors, but material designated as AEO or SOURCE CODE could not. (Docket #45-2 at ¶¶ 8-10). Eliminating the AEO provision permits the parties to allow mock jurors to access highly confidential information.

 1. Risk of Inadvertent Disclosure

In United States Steel Corp. v. United States, the Federal Circuit clarified that the relevant determination for denial of access under a protective order is "[w]hether an unacceptable opportunity for inadvertent disclosures exists." U.S. Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984). This determination turns on the extent to which the person to whom the information is to be disclosed is involved in "competitive decisionmaking" with the client. Id. The Federal Circuit in U.S. Steel gave the following explanation of "competitive decisionmaking:"

> The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access. The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

Id. at 1468 n.3 (emphasis added).

Apple asserts that Barker is a competitive decisionmaker as Barker is synonymous with Voice Domain. (Docket #45 at 14). Voice Domain, representing that it holds only four patents

directed to voice data technology and does not manufacture electronics, argues that it is not a competitor with Apple and, therefore, there is no particularized need for protection. (Docket #44 at 12; Docket #46 at 5). Apple asserts that this argument is unsupported by fact and law and disregards the fact that, as a patent inventor and prosecutor, access to highly confidential Apple documents creates an unacceptable risk to Apple's business. (Docket #45 at 14).

"[C]ourts have not limited the category of competitive decision makers to only those people who work for entities that make or sell competing products." Microsoft Corp. v. Common Sci. & Indus. Research Org., No. 6:06 CV 549, 2009 U.S. Dist. LEXIS 13675, at *18-19 (E.D. Tex. Mar. 14, 2008) (holding that, while parties were not traditional competitors in the market place, they were adversarial as one party produced products that the other claimed practiced its patent); see Apeldyn Corp. v. AU Optronics Corp., No. 08-568-SLR, 2012 U.S. Dist. LEXIS 85692, at *24 (D. Del. June 13, 2012) (stating that the fact that the plaintiff did not currently compete with defendant did not eliminate risk of inadvertent disclosure); St Sales Tech Holdings, LLC v. Daimler Chrysler Co., No. 6:07-CV-346, 2008 U.S. Dist. LEXIS 107096, at *23 (E.D. Tex. Mar. 14, 2008) ("Moreover, it is somewhat disingenuous to argue Sales Tech is not Defendants' competitor simply because Sales Tech is in the business of acquiring and enforcing patents, while Defendants manufacture and design automobiles. Plaintiff and Defendants all seek to utilize, in one manner or another, intellectual property as part of a business model for pecuniary gain."); Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc., 236 F.R.D. 146, 149 (W.D.N.Y. 2006) ("I note that TLI has not cited, nor has this Court found, any cases to suggest that the disclosure of proprietary information to an opposing patent inventor would be appropriate merely because the parties were not currently direct competitors, particularly where, as here, the inventor licenses the patent to a direct competitor."). Even where

parties are not "traditional competitors in the market place," an individual may still be deemed a competitive decisionmaker where the parties are in an "adversarial" posture and the individual receiving the highly confidential information would be "especially situated to take positions that are directly harmful and antagonistic to [the defendant]." Microsoft, 2009 U.S. Dist. LEXIS 13675, at *19-20.

Apple asserts that Barker is "especially situated to take positions that are directly harmful and antagonistic" to Apple because of the many hats he wears at Voice Domain. (Docket #45 at 15). Apple argues that Barker's role in licensing and litigating Voice Domain's patents presents a high risk of inadvertent disclosure, stating that Apple's information could be used by Barker to aid Voice Domain in determining what kinds of patents to prosecute or acquire, which companies to sue in future litigation, and the price of licenses or litigation settlements. (Id.). Courts have denied disclosure based on these concerns. See Intel Corp. v. VIA Techs., Inc., 198 F.R.D. 525, 530 (N.D. Cal. 2000) (denying access to protected information to in-house counsel where her "involvement in licensing through litigation constitutes competitive decisionmaking, because her advice and counsel necessarily affect licensing decisions"); Affymetrix, Inc. v. Illumina, Inc., Civil Action No. 05-901-JJF, 2005 U.S. Dist. LEXIS 15482, at *8 (D. Del. July 28, 2005) (holding that party's involvement with settling patent litigation and licensing crosses over into competitive-decision making and, therefore, party was appropriately barred from viewing confidential material under protective order). Apple also states that there is a high risk of inadvertent disclosure because Barker has prosecuted multiple patents related to the accused technology, and continues to invent, prosecute, and obtain patents from the PTO even if he does not have any pending patents related to the accused technology in this case. (Docket #44 at 16). Courts have recognized the risk of inadvertent use of confidential information if disclosed to

inventors, engineers, and scientists. See Trustees of Boston Univ. v. Everlight Elecs. Co., Ltd., No. 12-cv-11935-PBS, Docket #636 at 7-8 (D. Mass. July 8, 2014) (Boal, M.J.) ("Although the Court does not question [the inventor of the named patent and employee of plaintiff]'s intentions, it 'nonetheless question[s] his human ability during future years of research to separate the applications he has extrapolated from [defendants'] documents from those he develops from his own ideas) (quoting Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F. Supp. 20, 22 (D. Del. 1998)); Tailored Lighting, 236 F.R.D. at 149 ("[T]his Court has no reason to question the integrity of plaintiff's president and patent inventor; nonetheless, it seems unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests.").

The Court finds that Barker is a competitive decisionmaker. While Voice Domain and Apple may not make or sell competing products, Voice Domain alleges that Apple is producing products that practice its patent. As the sole employee of Voice Domain, Barker is "especially situated" to take positions "directly harmful and antagonistic" to Apple. While the Court has no cause to doubt Barker's integrity, it questions whether it is possible to avoid the subconscious use of Apple's confidential material in his future endeavors. Hence, the Court finds that there is a real risk of inadvertent disclosure if Barker is permitted to access the AEO material.

2. Balance of Harms

Although the Court has found that a risk of inadvertent disclosure exists, the Court must also balance that risk against the potential harm to the opposing party. See In re Deutsche Bank Trust Co. Ams., 605 F.3d 1373, 1380 (Fed. Cir. 2010). Voice Domain argues that it would suffer severe harm if the AEO provision is included in the protective order because it would

preclude Barker from evaluating any of the highly confidential materials in the case, and, because Barker is Voice Domain's sole employee, thereby prevent Voice Domain from making sound litigation decisions. (Docket #44 at 17-18). However, the Court finds that this hardship is mitigated by the fact that Voice Domain's counsel will have access to the AEO materials and can therefore competently advise their client. See Vardon Golf Co., Inc. v. BBMG Golf, Ltd., No. 91 C 0349, 1991 U.S. Dist. LEXIS 15283, at *4 (N.D. Ill. Oct. 24, 1991) (holding that the hardship on plaintiff due to plaintiff's sole owner, shareholder, and employee being unable to discover protected material is negligible because plaintiff's trial counsel would be permitted access to the protected material); see also EPL Holdings, LLC v. Apple Inc., 2013 U.S. Dist. LEXIS 71301, at *4 (N.D. Cal. May 20, 2013) ("Moreover, EPL brought this action against Apple; EPL's apparent lack of internal resources to effectively pursue this action does not mean that Apple's confidential information should be exposed to non-parties.").

Voice Domain also argues that the provision would impair Voice Domain's counsel's ability to consult with the inventor of the patent at issue and, thus, prevent them from preparing their case effectively. (Docket #44 at 18). This argument was made and rejected in Trustees of Boston University v. Everlight Electronics Co., Ltd. Judge Boal stated that, while the court was persuaded that the patent inventor had specialized knowledge about the patented technology, the court was not persuaded that the plaintiff would be unable to effectively prosecute the case unless the patent inventor was able to access the confidential materials. Trustees of Boston Univ., No. 12-cv-11935-PBS, Docket #636 at 8. Judge Boal relied on the fact that the patent inventor would be able to access discovery including confidential material that had not been designated outside counsel only and that the plaintiff had failed to show that it would be unable to obtain the assistance it needed from a different expert. Id. Those same considerations are at

play here. Barker is able to access material designated CONFIDENTIAL. Voice Domain also has not shown why it could not engage an expert other than Barker to assist it in this litigation.

The Court finds that the potential harm to Voice Domain from precluding Barker from accessing materials designated AEO does not outweigh the risk of inadvertent disclosure of Apple's confidential material. Thus, any proposed protective order submitted to this Court as a result of this Order shall contain an AEO provision.

B.     Patent Prosecution Bar

The parties have agreed that a prosecution bar is appropriate in this case for those who access material designated as SOURCE CODE. (Docket #45 at 11). Voice Domain has also agreed to bar Barker and counsel from prosecuting any new Voice Domain patent applications concerning the subject matter of this patent case. (Docket #44 at 8). The proposed confidentiality orders also contain an undisputed provision providing, "All Protected Material shall be used solely for this case or any related appellate proceeding and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function." (Docket #45-7 at ¶ 6(a)).

> Apple's proposed prosecution bar, as drafted on May 21, 2014 states:

> Absent the written consent of the Producing Party, any person on behalf of either Party who receives one or more items designated "CONFIDENTIAL-ATTORNEYS' EYES ONLY-SOURCE CODE" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" shall not be involved, directly or indirectly for the respective Party that they represent in the case, in any of the following activities: (i) advising on, consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the scope of claims in patents or patent applications relating to the functionality, operation, and design of software or hardware for data entry, voice recording, dictation, processing voice commands, converting speech to text, natural language processing, and/or interacting with a device (generally or as described in any patent in suit), before any foreign or

>domestic agency, including the United States Patent and Trademark Office. <u>These prohibitions are not intended to and shall not preclude counsel from participating in proceedings on behalf of a Party challenging the validity of any patent,</u> but are intended, inter alia, to preclude counsel from participating directly or indirectly in drafting or amending claims during reexamination, *inter partes* review, covered business method review, or reissue proceedings on behalf of a patentee. These prohibitions shall begin when access to "CONFIDENTIAL-ATTTORNEY'S EYES ONLY-SOURCE CODE" or "CONFIDENTIAL-ATTORNEY'S EYES ONLY" materials are first received by the affected individual, and shall end two (2) years after the final resolution of this action, including all appeals.

(Docket #45-1 at ¶ 8) (emphasis in original).

The dispute over the prosecution bar centers on two issues: (1) whether the prosecution bar should apply to those who access material designated as AEO, and (2) whether the prosecution bar should apply to post-grant proceedings (i.e. reexamination, *inter partes* review, covered business method review, or reissue proceedings). (Docket #45 at 11).

1. AEO Materials

While Voice Domain has agreed to a prosecution bar applying to SOURCE CODE, Apple argues that a broader prosecution bar applying to AEO material is needed as, per the scheduling order, it is required to produce its documents sufficient to show the operation of the accused products. (Docket #45 at 20). Apple states that, often, the technical details of how a product works are disclosed in documents like schematics, data sheets, specifications, flow charts, artwork, or formulas rather than or in addition to source code. (<u>Id.</u>). The preceding materials would fall under the AEO designation but not the SOURCE CODE designation. Apple seeks to apply the prosecution bar to individuals accessing the AEO material.

In <u>In re Deutsche Bank</u>, the Federal Circuit recognized that an attorney with access to its adversary's confidential information may be barred from representing clients in certain matters before the PTO due to the high risk of inadvertent disclosure and misuse of that information. <u>In

re Deutsche Bank, 605 F.3d at 1380-81. For the same reasons that the Court found that the AEO provision should be included in any submitted protection order, the Court finds that material designated AEO is entitled to protection under the prosecution bar.

     2. Post-Grant Proceedings

Under the Patent Act, patent owners and third parties may initiate a "reexamination" proceeding to confirm or challenge the validity of a previously issued patent. See 35 U.S.C. §§ 302-307. Once a reexamination request is made, the Director of the PTO determines whether the reexamination request raises a "substantial new question of patentability." 35 U.S.C. § 303. If not, the reexamination request is denied. Id. If it does, the Director orders a reexamination and gives both the owner and the requestor the opportunity to weigh in on the matter. 35 U.S.C. § 304. The reexamination goes forward "according to the procedures established for initial examination" – that is, the process undertaken by the PTO to examine a new patent application. 35 U.S.C. § 305. Amendments are allowed on reexamination, though they "must not enlarge the scope of a claim nor introduce new matter. Amended or new claims which broaden or enlarge the scope of a claim of the patent should be rejected under 35 U.S.C. 314(a)." Ameranth, Inc. v. Pizza Hut, Inc., No. 3:11-cv-01810, 2012 WL 528248, at *6 (S.D. Cal. Feb. 17, 2012) (quoting *Manual of Patent Examining Procedure* § 2666.01).

Until recently, courts generally did not include reexamination proceedings within the scope of a prosecution bar. See id. ("a review of cases directly discussing a prosecution bar applied to reexamination finds near unanimous support against extending the [prosecution] bar to cover reexamination"). In EveryScape, Inc. v. Adobe Systems, Inc., Judge Collings was faced with the parties' competing proposed protective orders, the dispute between the two centering on whether counsel should be barred from participating in reexamination proceedings. EveryScape,

13

Inc. v. Adobe Sys. Inc., No. 1:10-cv-11597-RGS, Electronic Order (D. Mass. Aug. 12, 2011) ("Specifically, plaintiff proposes that the prosecution bar not apply to representation of a patentee in reexaminations of the patent-in-suit initiated by [] litigants accused of infringing that patent."). Judge Collings, citing Crystal Image Technology, Inc. v. Mitsubishi Electric Corp., stated that he would follow those decisions in which courts have declined to extend the prosecution bar to reexamination proceedings in such circumstances. Id.

> The Court in Crystal Image stated:
>
> The Patent Act expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent. Thus, an important limitation on reexamination is that no proposed amended or new claim enlarging the scope of a claim of the patent will be permitted. Claims added or amended in a reexamination proceeding will necessarily be narrower and, therefore, no device can infringe the narrower claims emerging from reexamination that would not have infringed the original claims.

Crystal Image Technology, Inc. v. Mitsubishi Elec. Corp., No. 08-307, 2009 U.S. Dist. LEXIS 32972, at *5 (W.D. Pa. April 17, 2009) (quoting Pall Corp. v. Entegris, Inc., 655 F. Supp. 2d 169, 173 (E.D.N.Y. 2008)) (alterations omitted). "The above restriction 'both underscores the distinction between initial patent prosecution and reexamination, and effectively mitigates the potential misuse of PTO procedures to gain a collateral business or litigation advantage, thereby rendering a prosecution bar in the reexamination context largely unnecessary." Id. (quoting Pall Corp., 655 F. Supp. 2d at 173) (alterations omitted); see Kenexa Brassring Inc. v. Taleo Corp., No. 07-521-SLR, 2009 WL 393782, at *2 (D. Del. Feb. 18, 2009) ("Because reexamination involves only the patent and the prior art, defendant's confidential information is 'basically irrelevant to the reexamination.'").

"However, a newer line of cases recognizes that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve

its litigation position against alleged infringers." Telebuyer, LLC v. Amazon.com, Inc., No. 13-cv-1677, Docket #118 at 10 (W.D. Wash. July 7, 2014) (available at Docket #45-11) (citing Shared Memory Graphics, LLC v. Apple, Inc., 2010 U.S. Dist. LEXIS 125184, at *11 (N.D. Cal. Nov. 12, 2010) ("Claims may still be restructured in reexamination, and, in a given case, a patent owner may well choose to restructure claims in a manner informed by the alleged infringer's confidential information gleaned from litigation."); Grobler v. Apple Inc., 2013 U.S. Dist. LEXIS 65048, at *5-6 (N.D. Cal. May 7, 2013) (prohibiting counsel from drafting or amending claims in reexamination); EPL Holdings, 2013 U.S. Dist. LEXIS 71301, at *9-10 (holding that parties' counsel may participate in third-party initiated review proceedings so long as counsel is prohibited from assisting in any crafting or amendment of patent claims)). "These decisions recognize that drafting, amending, restructuring, or otherwise participating in reexamination proceedings may constitute 'competitive decision-making' as contemplated by the Federal Circuit in Deutsche Bank." Id. at 11. "Thus, where the need to protect confidential information outweighs the burden on the receiving party, a court may prohibit counsel from participating or consulting on reexamination proceedings, or may limit that participation." Id. The Telebuyer court found that the risk to Amazon's confidential information outweighed the burdens imposed on Telebuyer due to the breadth and volume of the material requested by Telebuyer and the possibility of counsel using such information in the PTO proceeding without technically "drafting" or "amending" a claim. Id. at 11. The court noted that the burden on plaintiff – the need to retain other outside counsel – was not too cumbersome as the court had no reason to doubt that plaintiff could secure different counsel for future patent action during the time of the prosecution bar. Id. at 8. The court stated its decision was consistent with the Model Stipulated Protective Order for the Northern District of California. Id. at 11; see N.D. Cal. Patent Local

Rule 2-2 Interim Model Protective Order, *available at* http://www.cand.uscourts.gov/model-protective-orders (updated August 20, 2014). However, the court noted that there was one particular circumstance where the burden on the receiving party may outweigh the risks. Id. The court stated that "[s]hould the producing party initiate the reexamination proceeding, the PTO proceeding might effectively be 'part and parcel of the litigation at issue;'" thus the prosecution bar would require the receiving party to retain separate counsel for what is essentially the same dispute, "another 'front' in the litigation." Id. at 11-12. Therefore, the court stated that, should the producing party bring reexamination proceedings, counsel for the receiving party would be permitted to participate in those proceedings upon a grant of leave from the court. Id. at 12; see also Shared Memory Graphics, 2010 U.S. Dist. LEXIS 125184, at *14-15 (holding that patentee counsel should not be banned from reexamination proceedings so long as (1) the proceedings are initiated by the opposing party, and (2) counsel expressly agrees that in the reexamination it will not rely on any confidential information supplied by the opposing party).

Apple has proposed allowing litigation counsel in this case to participate in a post-grant proceeding, but counsel's ability to draft or amend claims would be restricted. (Docket #45 at 22). At the hearing and in its supplemental memorandum, Apple also stated that it would be amenable to counsel from Fisch Sigler LLP, the firm currently representing Voice Domain, who have not accessed or reviewed Apple's documents and other information designated as AEO or SOURCE CODE to represent Voice Domain in a post-grant proceeding before the PTO for all purposes, including drafting and amending claims. (Docket #61 at 1-2). Apple conditioned its agreement to such a proposal on the condition that Voice Domain establish an appropriate ethical wall, and that materials designated AEO or SOURCE CODE not be shared or communicated in any way between any member of the Fisch Sigler litigation team and any member of the Fisch

Sigler post-grant team. (Id. at 2). Apple described the ethical wall as prohibiting any member of the Fisch Sigler litigation team from drafting or amending claims in a post-grant proceeding, but stated that it would not prohibit the Fisch Sigler litigation team from communicating with the post-grant team regarding prior art to the patent-in-suit, including prior art already furnished to Voice Domain by Apple along with its invalidity contentions. (Id.).

The Court finds the more recent line of cases recognizing "that even in a reexamination proceeding, a patent owner can use confidential information to restructure or amend its claims so as to improve its litigation position against alleged infringers" persuasive. See Telebuyer, No. 13-cv-1677, Docket #118 at 10. The Court recognizes the risk to Apple if parties with access to the AEO or SOURCE CODE materials are allowed to draft or amend claims during reexamination proceedings on behalf of Voice Domain. The Court believes that Apple's proposed prosecution bar and the ethical wall proposed in its supplemental memorandum address this real concern while placing the least burden possible on Voice Domain. However, the Court requires that the parties add one caveat to this provision in any proposed protective order. If Apple should bring reexamination proceedings, counsel for Voice Domain would be permitted to participate in those proceedings upon a grant of leave from the court. Such a provision addresses Voice Domain's concerns about gamesmanship and is also consistent with the case law relied upon by Apple. See Telebuyer, No. 13-cv-1677, Docket #118 at 12; Shared Memory Graphics, 2010 U.S. Dist. LEXIS 125184, at *14-15.

C.   Expert Discovery

Apple's proposed protective order contains a provision describing what materials are and are not discoverable from experts in this case. (Docket #45-2 at ¶ 20). Voice Domain's proposed protective order does not contain a similar provision. (Docket #45-7 at ¶ 20). Apple's

17

proposal states that testifying experts are not subject to discovery with respect to any drafts of their reports, notes, or outlines for draft reports. (Docket #45-2 at ¶ 20). Apple's proposal also limits discovery of materials provided to testifying experts to "those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case." (Docket #45-2 at ¶ 20). Voice Domain argues that this provision is not necessary and may lead to "gotcha"-type difficulties later in discovery to the extent the protective order varies with the actual requirements of Fed. R. Civ. P. 26. (Docket #44 at 20).

Pursuant to Fed. R. Civ. P. 26(a)(2), an expert's written report must contain "the facts or data <u>considered</u> by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(ii) (emphasis added). Apple's proposal differs from Rule 26(c) in that it only requires the parties to turn over materials "actually relied upon by the testifying expert." This is a distinction with a difference. <u>See</u> <u>Allstate Ins. Co. v. Electrolux Home Prods., Inc.</u>, 840 F. Supp. 2d 1072, 1080 (N.D. Ill. 2012) ("The term 'considered' invokes a broader spectrum of thought than the phrase 'relied upon' which requires dependence on the information.") (quotation omitted). Apple asserts that its proposal will forestall confusion over what will be disclosed as there has been tremendous variation in the interpretation of Rule 26 and prevent unnecessary motion practice. (Docket #45 at 22-23).

The Court finds that Apple has not justified the need for the additional protections in expert discovery beyond those that Rule 26(a)(2) provides. While it is true that Rule 26 is often the subject of litigation, Apple, who bears the burden here, has not provided any specific assertions of potential harm that it will face as to this issue beyond those that every party with an expert faces in litigation. Thus, any proposed protective order submitted to this Court shall not

contain a provision, unless agreed to by both parties, that restricts expert discovery beyond the bounds of Rule 26(a)(2).

IV.    CONCLUSION

For the foregoing reasons, the competing Motions for Protective Order (Dockets #44, 45) are both DENIED.  The Parties are hereby ORDERED to submit a Proposed Protective Order consistent with the reasoning and dictates of this Order by **October 22, 2014**.

.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE
